On petition for reconsideration filed February 8,* petition for reconsideration allowed, ballot title certified as modified February 29, 1996

Ruth ASCHER,
Lynn R. Nakamoto, Emilio Hernandez, Jr.,
James Posey, Jann Carson,
*Petitioners,*

*v.*

Theodore KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S42632)

911 P2d 934

Richard D. Wasserman, Assistant Attorney General, Salem, filed a petition for reconsideration for respondent. With him on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Scott J. Meyer, of Mitchell, Lang & Smith, Portland, filed a memorandum on behalf of petitioner.

DURHAM, J.

UNIS, J., dissenting.

---

* *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 909 P2d 1228 (1996).

## DURHAM, J.

The Attorney General petitions for reconsideration of this court's decision certifying a ballot title in this case. He argues that the last sentence of the summary in the ballot title certified by this court contains an error that would mislead voters about the effect of the proposed measure. He suggests modifications to the summary to correct the error. Petitioners agree with the changes proposed by the Attorney General. We allow the petition for reconsideration, modify the summary previously certified by this court, and certify the ballot title as modified.

Section 4 of the proposed measure states:

"(1) The definition of person from a disadvantaged group as defined in The Oregon Revised Statutes shall redefined [*sic*] as economicaly [*sic*] disadvanted [*sic*] only without regard to race, creed, religion, color, sex, national origin or sexual preference."

This court determined that section 4 "would limit the definition of 'affirmative action' in ORS 279.053(3), and thereby restrict the application of affirmative action policies of public contracting entities."[1] *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 556, 909 P2d 1228 (1996). The court concluded that "[t]hat is a significant legal change," *id.*, and, consequently, that "[t]he Attorney General did not err in referring to section 4 in the summary." *Id.* at 557.

---

[1] ORS 279.053 provides:

"(1) No provision contained in chapter 771, Oregon Laws 1975, shall be construed to prohibit any public contracting body from engaging in bidding and contracting practices designed to accomplish affirmative action goals for disadvantaged or minority groups.

"(2) In carrying out the policy of affirmative action, by appropriate ordinance, resolution or administrative rule, a public contracting body may limit competitive bidding on any public contract for procurement of goods and services or on any other public contract estimated to cost $50,000 or less to contracting entities owned or controlled by persons described in subsection (3) of this section.

"(3) As used in this section 'affirmative action' is a program designed to insure equal opportunity in employment and business for persons otherwise disadvantaged by reason of race, color, religion, sex, national origin, age or physical or mental disability."

This court held, however, that the Attorney General's summary failed to comply substantially with ORS 250.035(2)(d), because it merely reiterated section 4 and failed to identify the "major effect" of that section. *Ascher*, 322 Or at 557. Accordingly, this court modified the last sentence of the summary to read:

> "Affirmative action would protect only persons who are economically disadvantaged, regardless of race, creed, religion, color, sex, national origin, sexual preference."

The Attorney General argues that that description is misleading, because it implies incorrectly that section 4 would apply to *all* affirmative action. He observes that ORS 279.053(3) defines "affirmative action" only for purposes of public contracting. He argues that section 4 would not affect affirmative action programs in other areas. He therefore proposes that we modify the last sentence of the summary to read:

> "Affirmative action *in public contracting* would protect only persons who are economically disadvantaged, regardless of race, creed, religion, color, sex, national origin, sexual preference."

He also proposes additional changes to the summary to satisfy the 85-word limitation of ORS 250.035(2)(d).

We agree with the Attorney General that the last sentence of the summary previously certified by this court wrongly implies that section 4 would restrict the application of all affirmative action policies. ORS 182.100(3) defines "affirmative action," for purposes of policies affecting executive branch appointments, to mean

> "a method of eliminating the effects of past and present discrimination, intended or unintended, on the basis of race, religion, national origin, age, sex, marital status or physical or mental disabilities, that are evident or indicated by analysis of present appointment patterns, practices and policies."

Because that statute does not use the phrase "person from a disadvantaged group" or any similar phraseology, there is

no reason to believe that section 4 would affect the affirmative action policies to which ORS 182.100(3) is directed.[2]

In accordance with the foregoing discussion, we modify the summary previously certified by this court, with additions shown in italics and deletions shown in brackets, to read:

SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law provides government affirmative action programs to give equal opportunity in employment, public contracting, to cure unlawful discrimination. Measure [would] limits such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Affirmative action *in public contracting* would protect only *economically disadvantaged* persons [who are economically disadvantaged], regardless of race, creed, religion, color, sex, national origin, sexual preference.

We certify the following ballot title to the Secretary of State:

FORBIDS GOVERNMENT PREFERENCES BASED ON
RACE, RELIGION, SEX, NATIONAL ORIGIN

RESULT OF "YES" VOTE: "Yes" vote adopts statute forbidding government preferences based on listed factors, in employment, other areas.

RESULT OF "NO" VOTE: "No" vote rejects statute forbidding government preferences based on listed factors, in employment, other areas.

SUMMARY: Adopts statute. Oregon law now forbids government discrimination based on race, religion, color, sex, national origin. Law provides government affirmative action programs to give equal opportunity in employment,

---

[2] As we stated in our prior opinion, 322 Or at 557 n 3, we do not decide whether section 4 also would affect other statutes that use phrases such as "disadvantaged and minority groups," ORS 200.025(4)(c) and ORS 285.637(6), and "economically disadvantaged individual," ORS 200.005(1), (2), and ORS 774.040(1). As certified, the summary speaks to a statute that certainly would be affected. The full scope of section 4 remains an open question, however.

public contracting, to cure unlawful discrimination. Measure limits such programs by forbidding state, local government discrimination against, preference for citizens based on race, religion, color, sex, national origin. Applies in education, employment, contracting, public services. Affirmative action in public contracting would protect only economically disadvantaged persons, regardless of race, creed, religion, color, sex, national origin, sexual preference.

Petition for reconsideration allowed. Ballot title certified as modified.

**UNIS, J.,** dissenting.

I dissent for the reasons that I expressed in *Ascher v. Kulongoski (Elections Division #49)*, 322 Or 550, 560, 909 P2d 1228 (1996) (Unis, J., dissenting).